JOSHUA HOWARD,

      Plaintiff,

  v.           Case No. 14-cv-1157-pp

BELINDA SCHRUBBE,
DR. JOHN SCHETTLE,
and DR. B. DELAP,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 18) AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL OBJECTIONS TO THE DEFENDANTS' PROPOSED FINDINGS OF FACT (DKT. NO. 42)

Plaintiff Joshua Howard, who is incarcerated at the Green Bay Correctional Institution, is representing himself. He filed this case under 42 U.S.C §1983, alleging that the defendants violated his rights under the Eighth Amendment by failing to provide him fillings for his cavities for over four years, resulting in additional cavities and pain and causing one tooth to break apart. The plaintiff also alleges that defendant Belinda Schrubbe manipulated the dental waitlist to extend his wait to see the dentist, in retaliation for the plaintiff filing inmate grievances. The defendants have filed a motion for summary judgment. The court will grant in part and deny in part the defendants' motion.

## I.    FACTS[1]

### A.    Parties

The plaintiff was incarcerated at Waupun Correctional Institution (WCI) from July 2, 2002 until the time he filed his complaint. Dkt. No. 20 at ¶1.

Defendant John Schettle, D.D.S., is a dentist who has been employed by the Wisconsin Department of Corrections (DOC) since January 14, 1991. Id. At ¶2.

Defendant Belinda Schrubbe was employed as the manager of WCI's Health Services Unit (HSU) from December 9, 2001 to February 27, 2015. Id. ¶3. As HSU manager, Schrubbe worked with the primary care physician, dentist, psychiatrist and specialists serving as consultants to the Bureau of Health Services in a collaborative manner to provide quality health care in an efficient and effective manner. Id. at ¶9. While the HSU manager provides the overall administrative support and direction of the medical unit, the dental staff at WCI is in charge of the dental unit, including but not limited to scheduling inmates for appointments and managing the waitlist. Id. at ¶10. Dental units submit their waitlist information monthly to their direct supervisor and to the dental director. Id. at ¶11. Schrubbe did not have the authority to place or remove an inmate from the dental waitlist. Id. at ¶12. Any inquiries or complaints inmates made to Schrubbe about the waitlist would be referred to the dental staff. Id. at ¶13.

---

[1] The court takes facts from the Defendants' Proposed Findings of Fact (Dkt. No. 20) and from the Plaintiff's Proposed Findings of Fact (Dkt. No. 30).

Defendant Barbara De Lap was employed as the Dental Director of the DOC Bureau of Health Services from March 17, 1997 until August 12, 2015. Id. at ¶4. As the Dental Director, De Lap was not directly involved with the day-to-day activities in each of the institutions she oversaw. Id. at ¶5. De Lap was responsible for supervising the dentists who practice in the institutions, monitoring their practice and the development and implementation of the policies and procedures affecting the delivery of all dental care to offenders. Dkt. No. 30 at ¶60.  De Lap is responsible for recommending changes necessary to correct or improve dental services at all levels of care. Id. at ¶61. De Lap was Schettle's direct supervisor. Id. at ¶62. De Lap did not have access to individual institutions' dentist appointment schedules or the ability to add or delete names to/from the waiting lists. Dkt. No. 20 at ¶7.

B.      Dental Service Request Policy

Inmates entering WCI receive an inmate handbook informing them that if they require non-emergency medical attention they must submit a Health Services Request (HSR) or a Dental Services Request (DSR) to the HSU. Id. at ¶14.[2]

Dentists triage DSRs based on the patient's dental needs. Id. at ¶15. The dentist then forwards the triaged DSR to the dental assistant to be placed into the appropriate section of the waiting list. Id. Non-emergency routine dental

_____

[2] The handbook also informs inmates that if they need to see medical, dental or optical staff in an emergency situation, they need to alert unit staff of their problem or concern. *Id.*

services are elective and provided when requested by the inmate and/or when determined clinically appropriate by the treating dentist. Id. at ¶16.

On a typical day, WCI's Dental Services Unit received between ten and twenty-five DSRs from inmates. Id. AT ¶18. DSRs are divided into four categories—Emergency, Urgent, Routine and Hygiene. Id. at ¶19. A dental "Emergency" is defined as a dental problem causing a life-threatening condition and requiring immediate care. Id. at ¶20. Examples include uncontrolled bleeding, allergic reactions/shock, swelling or fractures causing impaired breathing, high fever from dental infection or serious trauma. Id. An "Urgent" dental request is defined as a condition which, if not completed in a timely manner, could result in undue pain and suffering. Id. at ¶21. Examples include moderate post-operative bleeding, pain not relieved by medications, acute oral infections, symptomatic trauma to teeth or jaws and periodontal or periapical abscess. Id. Medical staff typically see patients with Urgent requests the same day. Id.

"Routine" dental requests are further subdivided into the following three categories: Routine, Essential Routine and Prosthetic Routine. Id. at ¶22. A "Routine" request is an asymptomatic dental condition for which a delay in completion of up to one year would not result in serious risk. Id. at ¶23. Examples include minor caries (cavities), prophylaxis for "AAP I or II," old but serviceable fillings, prosthetics which are cosmetic needs only and denture repairs when the denture remains functional. Id. An "Essential Routine" request is a chronic and asymptomatic dental condition that could result in an

acute episode if not completed within six to eight weeks. Id. at ¶24. Examples include advanced caries (cavities), teeth with hopeless prognosis, infected teeth, and care for inmate patients which is relevant to their chronic medical conditions. Id.

Schettle usually tells patients during their appointments that if they submit a request and are not scheduled for an appointment within three months, they should submit another request. Id. at ¶29. Inmate patients must submit a new request after each appointment if they are requesting further dental work, except in the case of multi-appointment procedures such as root canal therapy or denture fabrication. Id. at ¶30.

Schettle typically saw seven or eight patients per day, with each appointment lasting approximately forty-five minutes. Id. at ¶31. Schettle typically could fill two to three cavities in one forty-five minute appointment. Id. at ¶32. If a patient reported pain during a dental appointment, Schettle would note it in the patient's dental record. Id. at ¶34.

C.    Dental Treatment of the Plaintiff

The plaintiff entered intake at Dodge Correctional Institution on May 1, 2002. Dkt. No. 30 at ¶1. On May 8, 2002, Schettle examined the plaintiff, took an x-ray, and noted that he had several cavities. Id. at ¶2. He informed the plaintiff that he would need fillings and recommended that he have his remaining wisdom teeth pulled. Id. at ¶4. On May 24, 2002, Schettle removed

the plaintiff's two wisdom teeth (nos. 1 and 16). Id. at ¶5. On July 2, 2002, the

plaintiff transferred to WCI. Id. at ¶ 6.[3]

On June 7, 2010, Schettle saw the plaintiff for a routine exam/cleaning.

Dkt. No. 20 at ¶35. He identified two of the plaintiff's teeth with medium-sized

cavities, and three teeth with small or minor cavities. Id. at ¶36. Schettle

diagnosed the plaintiff with gingivitis and identified cavities in five teeth (nos. 7,

14, 15, 19 and 30). Dkt. No. 30 at ¶10. Schettle noted two areas on the

plaintiff's dental chart where tooth no. 14 contained cavities and one area

where a cavity might be progressing. Id. at ¶20.

The parties dispute whether the plaintiff complained of pain at this

appointment. According to the defendants, the plaintiff did not identify any

pain during the examination on June 7, 2010. Id. at ¶37. The plaintiff, on the

other hand, states that he told Schettle that he could not eat ice cream or drink

ice water without feeling a sharp pain, and that it hurt to chew directly on the

_____

[3] In his proposed findings of fact, the plaintiff cites to two pages from his medical records that relate to his 2002 appointment with Schettle at Dodge Correctional Institution, and his alleged placement on the priority wait list for a dental appointment in November 2009. Dkt. No. 30 at ¶¶2-5, 8. The plaintiff, however, did not submit these two documents from his dental file. The plaintiff submitted pages from his dental file as Exhibit C, after he filed his summary judgment response. Dkt. No. 33-1. Exhibit C is complete except for the two above-referenced documents (Ex. C at 1, 5). Along with his Exhibit C dental records, the plaintiff filed a letter requesting that the court either order WCI to process his request for copies of the two documents, or compel the defendants to produce them. Dkt. No. 33. (The defendants state that they attempted to get a signed authorization for a release of records prior to 2010 from the plaintiff, but that he refused to sign. Dkt. No. 35 at ¶4.) The court does not need these two documents to resolve the defendants' summary judgment motion. First, the plaintiff's declaration attests to the 2002 appointment with Schettle. Second, because the court is denying summary judgment as to Schettle, the plaintiff will not be prejudiced by not having the two documents.

left side of his mouth. Dkt. No. 36 at ¶37; Dkt. No. 30 at ¶12. The plaintiff also says that Schettle told him that if he submitted a DSR for the fillings, Schettle said he would make sure the plaintiff was called back soon. Dkt. No. 30 at ¶13.

Later that day, the plaintiff submitted a DSR stating that he needed five to six cavities filled. Dkt. No. 20 at ¶38. Schettle responded to the plaintiff's DSR on June 9, 2010, informing the plaintiff that he was placed on the "Essential" wait list for fillings. Id. at ¶39.

Schettle next saw the plaintiff thirteen months later, on July 21, 2011, for a routine exam. Id. at ¶40. During this appointment, Schettle filled two cavities (teeth nos. 15 and 19), and the plaintiff received updated x-rays. Id. at ¶41. Schettle identified nine cavities in six teeth (nos. 3, 7, 14, 15, 19, and 30). Dkt. No. 30 at ¶16. He also documented cavities on the center, right and bottom surfaces of tooth no. 14. Id. at ¶21.

The plaintiff's dental records do not reflect that he complained of any pain or sensitivity during the July 21, 2011 appointment. Dkt. No. 35 at ¶31. According to the plaintiff, however, he told Schettle that it still hurt to chew directly on his back teeth and that his sensitivity to air and ice had gotten worse since his last visit. Dkt. No. 30 at ¶31.

The parties dispute whether the plaintiff and Schettle discussed treating his other cavities on July 21, 2011. According to the plaintiff, he asked Schettle when he would be able to get the rest of his cavities filled, and Schettle said he would try and schedule it soon so that the plaintiff would not have to wait as long in between appointments. Dkt. No. 30 at ¶32. The defendants, on the

other hand, state that it is the patient's responsibility to request dental treatment. Dkt. No. 35 at ¶32.

On July 24, 2011, the plaintiff submitted an Interview/Information Request, stating that

> [a]fter I had my teeth cleaned the dentist said I needed 5-6 fillings. On 6-7-10 I put in a dental slip to get 5-6 fillings. When I got 2 fillings the other day I was told I would have to sign a co-pay each time I came in. I should only have to pay 1 copay.

Dkt. No. 20 at ¶42.

On February 17, 2012, the plaintiff submitted an Interview/Information Request expressing his dissatisfaction with the wait time to have his cavities filled. Id. at ¶44. On February 20, 2012, Schettle responded that the plaintiff was on the Routine list for fillings and that the $7.50 co-pay applied. Id. at ¶45.

On June 11, 2012, the plaintiff submitted a DSR inquiring if he was on the waitlist to get the rest of his cavities filled. Id. at ¶46. On June 12, 2012, Schettle responded again that the plaintiff was on the Routine wait list for fillings. Id. at ¶47.

Between June 12, 2012 to May 19, 2014, the plaintiff did not submit any DSRs inquiring as to the status of an appointment. Id. at ¶49. At no time between June 12, 2012 and May 19, 2014 did the plaintiff alert unit staff that he was experiencing pain from his cavities while on the waitlist for his fillings or that he required emergency treatment. Id. at ¶50.

According to the plaintiff, throughout 2013 and beyond, the pain he experienced due to his cavities increased; he says, however, that he stopped filing complaints, because he that assumed that the complaints were the reason he had "to wait longer than the (13) months it took to get his first round of fillings before he began formally complaining." Dkt. No. 30 at ¶49.

On May 19, 2014, the plaintiff submitted a DSR stating that a piece of his tooth broke off while he was eating, that his tooth was cutting his tongue and that it hurt to chew. Dkt. No. 20 at ¶51. Schettle responded to the plaintiff's request on May 20, 2014, saying that he was on the Essential waitlist. Id. at ¶52.

On May 21, 2014, Schettle repaired the plaintiff's broken tooth. Id. at ¶53. The tooth that broke apart was tooth no. 14, a molar with an untreated cavity. Dkt. No. 30 at ¶50. (Tooth no. 14 had been identified on June 7, 2010, as one of the teeth with cavities. Dkt. No. 22-1 at 16.) The plaintiff explained to Schettle that he had been waiting months for fillings, and that it hurt to drink or eat certain foods. Dkt. No. 30 at ¶54. Schettle refused to fill any other cavities, but he promised to call the plaintiff back soon for another appointment. Id.

On May 27, 2014, the plaintiff submitted an HSR stating that he still wanted to be on the waitlist to have the rest of his cavities filled. HSU staff forwarded the request to Schettle. Dkt. No. 20 at ¶54. Schettle responded to the plaintiff's request on May 28, 2014, saying that he was on the Routine list for fillings. Id. at ¶55.

The plaintiff was scheduled for a dental cleaning on June 12, 2014, but he refused this appointment and signed a refusal form on that date. Id. at ¶56. The dental hygienist noted that she discussed with the plaintiff how his oral health could be compromised by refusing treatment. Id. The plaintiff explains that once he confirmed the dental appointment was to have his teeth cleaned, and not to receive fillings, he refused the pass because it conflicted with a legal library pass. Id. at ¶55.

The parties dispute whether the plaintiff had a dental appointment on October 23, 2014. According to the defendants, the plaintiff was scheduled for dental treatment on October 23, 2014, but he refused this appointment and refused to sign a refusal form. Dkt. No. 20 at ¶57. The plaintiff, on the other hand, says that he was never told that he had a dental pass on October 23, 2014, and that he did not refuse a pass to see the dentist. Dkt. No. 36 at ¶57; Dkt. No. 30 at ¶¶80-83.

In addition to the physical pain the plaintiff suffered because of his untreated cavities, the deterioration of his teeth has caused him severe embarrassment and chronic bad breath that has made him extremely self-conscious when close to others. Dkt. No. 30 at ¶86.

D.    Grievances the Plaintiff Filed

1.    *July 22, 2011 – Complaint WCI-2011-14243*

On July 22, 2011, the plaintiff filed complaint WCI-2011-14243, complaining that he had to wait over a year for a dental visit, and then was only able to have two cavities filled. Dkt. No. 30 at ¶34. The institution

complaint examiner contacted Schrubbe about the delay and, after reviewing

the plaintiff's dental file, Schrubbe reported:

> Patient was seen for a routine dental exam on 6-7-10.
> Patient wrote in on 6-9-10 requesting the non-urgent work
> identified at exam to be scheduled. Patient was seen 13+
> months later on 7.21.11 and the dentist repeated exam and
> did requested dental work. Due to the fact that the work was
> noted as non-urgent, it is not for HSM to determine if over a
> year wait is appropriate. Patient's dental needs have been
> addressed. Patient has requested further work to be done.

Id. at ¶35.

On September 9, 2011, the complaint was dismissed with the

modification that defendant De Lap receive a copy of the complaint. Id. at ¶39.

In September 2011, De Lap was alerted of the complaint, which alleged

that the plaintiff had been on the waiting list for thirteen months. Id. at ¶66. At

that time, the goal for treating routine, non-urgent dental needs was twelve

months. Id. at ¶67. After becoming aware of the plaintiff's offender complaint,

De Lap instructed WCI staff to work on a system to decrease the waiting time

for routine dental care. Id. at ¶68. De Lap did not feel waiting thirteen months

on the Routine waiting list would have negatively impacted the plaintiff's dental

health. Id. at ¶69. On September 12, 2011, Schettle and Schrubbe received an

email from De Lap, stating that thirteen months was a long time and

instructing them to work on a system to decrease the wait time. Id. at ¶40.

De Lap copied her response to Anthony Montagna, who was the direct

supervisor of WCI's dental unit in September 2011. Id. at ¶71. Montagna was

responsible for following up with the request to work on a system to decrease

the wait time for routine dental care. Id. The plaintiff disputes that Montagna

was WCI's dental unit direct supervisor during the relevant period. Dkt. No. 36 at ¶8. The defendants do not dispute that De Lap was Schrubbe's direct supervisor. Dkt. No. ¶62.

2. *February 18, 2012 – Complaint WCI-2012-4002*

On February 18, 2012, the plaintiff filed complaint WCI-2012-4002, complaining about slow dental services. Id. at ¶43. The institution complaint examiner contacted Schrubbe about the complaint, and she reported:

> Patient was seen by dental in June 2010 for routine exam/cleaning. Patient requested in writing to have cavities filled, he was placed on routine list. Patient was seen by Dentist on July 21, 2011 for routine exam and he did have two teeth worked on at that time. Patient submitted another request on 7-25-11 for further dental work and he was placed on routine list. Inmate did wait over a year to get dental work done.

Id. at ¶45. The complaint was dismissed on March 12, 2012. Id. ¶49. Copies were sent to Schrubbe and De Lap. Id.

3. *July 3, 2014 – WCI-2014-12998*

On July 3, 2014, the plaintiff filed a third complaint—WCI-2014-12998— due to the delay causing his molar to fall apart. Id. at ¶56. In response to this complaint, Schrubbe reported to the complaint examiner that:

> Patient submitted DSR in 2012 for fillings and he was put on the routine wait list. Patient did not write in again requesting dental work until 5.20.14. Patient was seen on 5.21.14 for dental work. Patient then wrote in again for additional work to be done. Patient was scheduled for a cleaning, but he refused this appointment on 6.12.14. Patient is scheduled with the dentist for routine dental work this month. It is not clear why patient did not get in for original DSRs in 2012, or why he did not notify Dental Department that he was still waiting. The dental database did have some computer issues back in 2012, at which time his name may have been

dropped from the list. Inmate did not notify HSU/DSU of any
issues or concerns from 6.12.12 through 5.19.14.

Id. at ¶57. On August 7, 2014, the complaint examiner recommended that the

complaint be dismissed, stating:

> HSU cannot address a concern unless they are aware of it.
> In this case, as HSM Schrubbe elaborates, once the Dental
> Department was aware of the concern they took measures to
> address it. There is no indication inmate Howard was being
> ignored.

Id. at ¶58. On October 21, 2104, the complaint was dismissed with the

modification that De Lap receive a copy. Id. ¶59.

    E.    <u>Retaliation Claim</u>

Schrubbe was aware that the plaintiff filed several offender complaints

about the waitlist time for dental care. Dkt. No. 20 at ¶64. Schrubbe does not

specifically recall the offender complaints, but says that it would have been her

usual practice to review the inmate's dental records first and then forward the

complaint to the dental unit for the dentist to review. Id. at ¶65.

The plaintiff avers that Schrubbe retaliated against him for filing the

2012 complaint by removing him from the waitlist and telling the complaint

examiner that it was the result of a computer glitch. Dkt. No. 30 at ¶90. He

also says that Schrubbe retaliated against him for filing the 2014 complaint by

telling the complaint examiner that he had an appointment that same month,

which never existed, then fabricating an October 23, 2014 refusal to justify his

lack of treatment. Id. at ¶91.

## II.    DISCUSSION

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.    Eighth Amendment Deliberate Indifference Claim

The defendants argue that the plaintiff cannot maintain a deliberate indifference claim because he has not shown that he had a serious medical need or that he was harmed by a delay in treatment. They also argue that they were not deliberately indifferent to the plaintiff's dental needs.

The plaintiff responds that genuine issues of material fact preclude summary judgment for the defendants. The plaintiff believes that he had a serious medical need, and argues that the question of whether he had such a need is genuine issue of material fact for a jury to decide. The plaintiff also maintains that the delay in treatment caused harm and that the defendants were deliberately indifferent to his needs.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This standard contains both an objective element (*i.e.*, that the medical needs be sufficiently serious) and a subjective element (*i.e.*, that the officials act with a sufficiently culpable state of mind).  Id.

If a cavity is severe enough that failure to treat it causes unnecessary and prolonged pain or worsens tooth decay, the cavity presents a serious, if not emergent, medical need. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (failure to treat tooth decay that caused serious pain supported claim for deliberate indifference). "Tooth decay can constitute an objectively serious

medical condition because of pain and the risk of infection." Id. at 440 (citing

Board v. Farnham, 394 F.3d 469, 480-81 & n.4, 482-83 (7th Cir. 2005)); see

also Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity

presented serious medical condition).

In Harrison, the Second Circuit Court of Appeals explained that,

"[o]rdinarily, a tooth cavity is not a serious medical condition, but that is at

least in part because a cavity is so easily treatable." 219 F.3d at 137. The court

went on to state:

> Absent intense pain or other exigency, the treatment of a
> cavity (in or out of prison) can safely be delayed by the
> dentist's schedule or the patient's dread or neglect, can be
> subject to triage or the management of care, can be
> mitigated or repaired temporarily, and can be coordinated
> with other related conditions that need to be treated
> together. Nevertheless, a tooth cavity is a degenerative
> condition, and if it is left untreated indefinitely, it is likely to
> produce agony and to require more invasive and painful
> treatments, such as root canal therapy or extraction. *See*
> 1993 Public Health Reports 1993, U.S. Department of Health
> and Human Services, Pub. No. 108: 657–672, *Toward
> Improving the Oral Health of Americans: an Overview of Oral
> Health Status and Care Delivery* 3 ("Dental caries is a
> progressive disease process. Unless restorative treatment is
> provided, the carious lesion will continue to destroy the
> tooth, eventually resulting in pain, acute infection, and
> costly treatment to restore the tooth or have it removed.");
> *e.g.*, Edwina Kidd and Sally Joyston–Bechal, *Essentials of
> Dental Caries: The disease and its management* 45 (1997)
> ("[T]he 'point of no return' [for a carious lesion] where we can
> no longer hope for arrest .... is when a cavity is present....").
> Consequently, because a tooth cavity will degenerate with
> increasingly serious implications if neglected over sufficient
> time, it presents a "serious medical need" within the
> meaning of our case law. *See Chance*, 143 F.3d at 702-03.

*Id.*

The above cases show that the plaintiff's dental condition—nine cavities and an eventual breakdown of tooth no. 14—constituted a serious medical need under the Eighth Amendment. The court's analysis will focus on the subjective element of an Eighth Amendment claim: whether the defendants acted with deliberate indifference.

Establishing deliberate indifference under the subjective prong is a high standard; medical malpractice is insufficient, as is a mere disagreement with a medical professional's medical judgment. See Estelle, 429 U.S. at 106; Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, 'no minimally competent professional would have so responded under those circumstances.'" Id. (quoting Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)).

"Delay is not a factor that is either always, or never, significant. Instead the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (finding that a three-month unexplained delay in obtaining a dental appointment could support a deliberate indifference claim if defendant was aware of the severity of the inmate's pain and dental problems yet refused to approve a dental visit). "A significant delay in effective medical treatment . . . may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." Berry, 604 F.3d at 441, 442 (finding that a

one-month delay in referring inmate to a dentist resulted in "a substantial an unnecessary delay in the treatment of [inmate's] decaying tooth" and created an issue of material fact about the prison physician's deliberate indifference).

### 1. Schettle

The plaintiff contends that there is a genuine issue of material fact as to whether Schettle consciously ignored his dental needs. He points to the June 7, 2010, failure to treat; the thirteen-month delay and the July 21, 2011, failure to fill more than two cavities; the failure to treat tooth no. 14 on July 21, 2011; the thirty-four-month delay and the May 21, 2014, failure to treat cavities; and Schettle's practice of limiting each visit to forty-five minutes.

It is undisputed that on June 7, 2010, Schettle determined that the plaintiff had five or six cavities. The plaintiff filed a DSR later that same day to have those cavities filled. The plaintiff's dental records for June 9, 2010, state "DSR Essential list fillings." Presumably, this means that the plaintiff was placed on the "Essential Routine" wait list on June 9, 2010. This is notable because, according to the defendants, an "Essential Routine" request is a chronic and asymptomatic dental condition that, if not completed within six to eight weeks, could result in an acute episode (not the up-to-one-year treatment recommendation timeline for simple "Routine" requests).

The plaintiff was not seen for his cavities until July 21, 2011, thirteen months later. At that appointment, Schettle found that the plaintiff's cavities had increased from five or six to nine, and he filled two of them.

The plaintiff submitted an Interview/Information Request on July 24, 2011, asking about the co-pay for filling of the remainder of his cavities as he'd requested in his June 7, 2010 DSR. The record is inconsistent about whether the plaintiff was placed on the Routine waitlist after he filed this request. Schrubbe's response to complaint WCI-2012-4002 stated in part: "Patient submitted another request on 7-25-11 for further dental work and he was placed on routine list." On the other hand, the plaintiff's medical file shows that after his July 21, 2011 appointment, he was not placed on the Routine waitlist until February 20, 2012.

The plaintiff filed another Interview/Information request on February 17, 2012, expressing his dissatisfaction with the wait time to have his cavities filled (which was about twenty-one months by that time). It appears undisputed that he was placed on the Routine wait list after this request.

On June 11, 2012, the plaintiff filed a DSR asking if he was on the waitlist to get his cavities filled, and on June 12, 2012, received confirmation that he was.

On May 16, 2014, twenty-three months later, the plaintiff's tooth no. 14—the molar with three untreated cavities--broke. Schettle repaired that tooth on May 21, 2014, but did not treat the plaintiff's other cavities at that time.

The parties dispute whether the plaintiff told Schettle he was in pain during his appointments. According to the defendants, if the plaintiff had noted pain in any of his DSRs or during his appointments, Schettle would have seen

19

him on an urgent basis. According to the plaintiff, he personally told Schettle he was in pain on June 7, 2010; July 21, 2011; and May 21, 2014.

According to the defendants, based upon Schettle's professional judgment and expertise, and to a reasonable degree of medical certainty, the plaintiff received appropriate care and was not denied care resulting in further injury or infliction of pain. Schettle's statement is confusing, given the multi-year delay in treating the plaintiff's cavities. See Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008) (explaining that treatment decisions cannot shield a medical provider from finding of deliberate indifference if the chosen course of treatment was so far afield of accepted norms that failure to exercise medical judgment can be inferred).

A reasonable factfinder could conclude that Schettle knew that failing to treat the plaintiff's cavities for almost four years could harm the plaintiff, and that he knew the plaintiff was in pain because of his untreated cavities. A reasonable factfinder also could conclude that the delay did harm the plaintiff, given that tooth no. 14 had two cavities on June 7, 2010, three cavities on July 21, 2011, and broke apart in May 2014. Even if tooth no. 14 had not broken, Schettle's ongoing failure to treat the plaintiff's cavities could support a finding that he acted with deliberate indifference to the plaintiff's serious medical needs. The court will deny summary judgment on the Eighth Amendment deliberate indifference claim as to Schettle.

## 2. *Schrubbe & De Lap*

The plaintiff asserts that there is a genuine issue of material fact as to whether Schrubbe consciously ignored his dental needs. He points to the fact that WCI-2011-14243 was forwarded to Schrubbe, and that she wrote a report giving the false impression that all necessary dental work had been completed; that there are facts in the record from which a fact-finder could infer that she knew he had not been placed on the waitlist at the time she made that report to the complaint examiner; that the 2012 complaint was forwarded to Schrubbe, who again filed a report that neglected to mention the delay in placing him on the waitlist; and that the 2014 complaint was forwarded to Schrubbe, who responded by "continuing to minimize any inaction on the part of her unit and misrepresent how long the plaintiff had actually been waiting for treatment." Dkt. No. 28 at 17.

The plaintiff also contends that there is a genuine issue of material fact as to whether De Lap deliberately ignored the plaintiff's dental needs. According to the plaintiff, there is evidence upon which a reasonable jury could find that De Lap had the ability to correct the problem; he alleges that there is evidence to indicate that De Lap was Schettle's direct supervisor, but says that even if she wasn't, she received copies of his complaints for a reason. She was the one who ordered the dental unit to come up with a system to decrease the wait time, and was the one who wrote to Schettle that she felt a thirteen-month delay was too long.

It is undisputed that in addition to the above-described DSRs and Interview/Information requests the plaintiff filed, he also submitted three offender complaints regarding the delay in getting his cavities filled. Schrubbe had direct involvement in investigating the complaints, and each complaint was forwarded to De Lap. After the first grievance noting the thirteen-month delay, De Lap directed Schrubbe and Schettle to create a system for reducing wait times, because a thirteen-month delay for a Routine issue was too long. After that, the plaintiff filed an offender complaint on February 18, 2012, complaining of slow dental services, and he filed another one on July 3, 2014, due to the delay that allegedly caused his tooth no. 14 to fall apart.

The record supports a finding that Schrubbe was deliberately indifferent. She reviewed the plaintiff's dental file to investigate each of the three complaints he filed. Having done that, she would have known that on June 7, 2010, Schettle found five to six cavities, that the plaintiff was placed on the "Essential Routine" waitlist, that only two of the cavities were filled on July 21, 2011 (by that time, the plaintiff had nine cavities), and that no other cavities were filled.

Schrubbe contends that she did not have the authority to place the plaintiff back on the waitlist and that the Dental Services Unit, not Schrubbe, handled his dental care. The court is not persuaded by Schrubbe's argument that she cannot be held liable for the plaintiff's treatment because she lacked authority to place the plaintiff on the dental waitlist. See Berry, 604 F.3d at 443-44. In any event, as HSU Manager, Schrubbe's job duties included

22

working collaboratively with the dentist to provide quality health care in an efficient and effective manner.

Turning to De Lap, it is undisputed that dental units submit their waitlist information monthly to the dental director. There is a dispute regarding whether De Lap was the supervisor of the dental unit, but there is no dispute that she was Schettle's direct supervisor. De Lap received emails about each of the plaintiff's three offender complaints, and the fact that she responded to the first of those complaints with a directive to Schrubbe and Schettle to reduce the waitlist time shows that she had some authority to do something. She was notified of two additional complaints after she issued that directive, so she had reason to know that the delays continued. While it is a closer call, the court finds that the record supports a finding that De Lap acted with deliberate indifference because she failed to ensure that the plaintiff received dental care. See Perez v. Fenoglio, 792 F.3d 768, 781-82 (7th Cir. 2015).

C.     Retaliation Claim

The defendants contend that the plaintiff's retaliation claim against Schrubbe fails as a matter of law. In response, the plaintiff responds that Schrubbe retaliated against him in response to his complaints.

To prove retaliation, the plaintiff must show "(1) that he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action.'" Bridges v. Gilbert, 557 F.3d 541, 546

(7th Cir. 2009) (quoting <u>Woodruff v. Mason</u>, 542 F.3d 545, 551 (7th Cir. 2008)).

If he can show that retaliatory animus was a factor, then the burden shifts to

the defendants to prove that the same actions would have occurred in the

absence of the protected conduct. <u>Spiegla v. Hull</u>, 371 F.3d 928, 941 (7th Cir.

2004) (citing <u>Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287

(1977)).

According to the plaintiff, if Schrubbe had followed her stated usual

practice of reviewing the plaintiff's dental records in response to the 2011

complaint, those records would have showed that the plaintiff had requested

fillings for five to six cavities on June 7, 2010, received only two fillings on July

21, 2011, and still was waiting for the remaining fillings. Yet Schrubbe

reported to the complaint examiner that at the July 21, 2011 appointment, the

dentist had done the dental work the plaintiff had requested on June 9, 2010,

and that the plaintiff's "dental needs have been addressed." Dkt. No. 30 at ¶35.

The plaintiff asserts that because Schettle had *not* done all the requested

dental work, Schrubbe's report intentionally misrepresented the facts to the

complaint examiner.

The plaintiff also argues that after he filed his 2012 complaint, Schrubbe

filed a report that summarized his history. The report recounted that he'd been

seen in 2010; that he'd asked in writing to have cavities filled; that he'd been

placed on the "Routine" list; that he'd been seen on July 21, 2011 and two

teeth were "worked on" at that time; that he'd submitted another request on

July 25, 2011 for more dental work; that he again was placed on the "Routine"

24

list; and that he had waited over a year to get dental work done. Dkt. No. 30 at ¶45. The plaintiff complains that if Schrubbe had—as she says was her practice—reviewed his medical records before writing that report, she would have seen, and reported, that he wasn't put on the "Routine" list until seven months after the July 2011 appointment. Id. at ¶46. He argues that by that time, he had been waiting some twenty months for his remaining fillings, and that Schrubbe deliberately left this out of her report, misrepresenting his situation to the complaint examiner. Id. at ¶70.

Finally, regarding the 2014 inmate complaint, the plaintiff says that Schrubbe deliberately told the complaint examiner that the plaintiff had an appointment which, in fact, he'd never had, that she "fabricated" his refusal to attend the fabricated appointment "to justify [the] lack of treatment." Id. at ¶91.

As to the first element, the court agrees that filing an inmate complaint is activity protected by the First Amendment.

As to the "retaliatory actions" the plaintiff states that Schrubbe took, the plaintiff alleges that she made false or misleading statements about his situation in her reports to the complaint examiner. The record bears some support for this allegation as to the 2011 complaint—if Schrubbe did, as she says was her practice, review the plaintiff's medical records before reporting to the complaint examiner, she would have seen that the dentist had *not* completed all the work the plaintiff had requested in his June 7, 2011 DSR. Arguably, telling the complaint examiner that the dentist had completed all the work when that was not true could be retaliatory. Regarding the 2012

25

complaint, however, the plaintiff does not allege that Schrubbe was untruthful. She *did* concede in the report that followed the 2012 complaint that the plaintiff had waited over a year to get treatment. The plaintiff takes issue with the fact that she didn't say exactly how long he'd been waiting—some twenty months. But the fact is, Schrubbe conceded that the plaintiff's complaints about a very long delay were accurate. As to Schrubbe's report following the 2014 complaint, the plaintiff claims that Schrubbe lied about his having a dental appointment on October 23, 2014, and that she "fabricated" a document showing that he'd refused to go to that appointment. But the very medical records the plaintiff relies upon reflect the appointment, and the refusal to attend. Dkt. No. 22-1 at 1 (medical record entry); Dkt. No. 22-1 at 3 (Form DOC-3220 Refusal of Recommended Health Care form, dated October 23, 2014 and signed by CO Benson). The court will analyze only the plaintiff's claim that Schrubbe retaliated against him in her report following the 2011 complaint.

The plaintiff alleges that Schrubbe misrepresented to the complaint examiner that all the 2011 work he'd requested had been completed to retaliate against him for filing the July 2011 complaint. The defendants argue that Schrubbe was supposed to refer dental complaints to the dental unit, and that she did not have any personal involvement in scheduling dental appointments or putting people on the dental waitlist. Dkt. No. 19 at 15. That doesn't address the plaintiff's argument—that Schrubbe deliberately misrepresented his situation to the complaint examiner so that his complaint would be denied. The plaintiff asserts that the "deprivation" he suffered because of Schrubbe's

alleged retaliation was that he was "deprived . . . of a favorable outcome and the possible treatment of his cavities." Dkt. No. 28 at 23. That arguably is the kind of action that could chill future First Amendment activity.

The court concedes that this is a close call—one statement, in response to one complaint, that arguably could have been the result of a misunderstanding of the medical records. But the court will allow the plaintiff to proceed on his First Amendment retaliation claim as to Schrubbe with regard to this one report.

> D. <u>Summary</u>

In sum, the court denies the defendants' motion for summary judgment as to the defendants' Eighth Amendment deliberate indifference to a serious medical need claim. The court denies the defendants' motion as to the plaintiff's retaliation claim against Schrubbe relating to her report following the 2011 complaint, and grants the motion regarding her other reports.

## III. MOTION FOR LEAVE TO FILE SUPPLEMENTAL OBJECTIONS (Dkt. No. 42)

On March 13, 2018, the court received from the plaintiff a letter motion, asking the court to allow him to file a declaration that Schettle made in a 2008 case. Dkt. No. 42. He argued that he'd "recently obtained" the declaration. <u>Id.</u> He attached to this letter his proposed supplemental objections to the defendants' proposed findings of fact, dkt. No. 42-1, and the declaration from the 2008 case, dkt. No. 42-2.

The court will deny the plaintiff's motion as unnecessary. The court is denying Schettle's motion for summary judgment.

## IV.    CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment. Dkt. No. 18.

The court **DENIES AS UNNECESSARY** the plaintiff's letter motion to file supplemental objections to the defendants' proposed findings of fact. Dkt. No. 42.

The court will issue a separate order, scheduling a status conference to discuss next steps in the litigation.

Dated in Milwaukee, Wisconsin this 19th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**